IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID HARRIS,

    Plaintiff,

vs.

UBH OF OREGON, LLC, dba Cedar Hills Hospital,

    Defendant.

Case No. 3:17-cv-01296-AA
**OPINION AND ORDER**

---

AIKEN, Judge:

Plaintiff David Harris filed the initial complaint in this diversity action on August 21, 2017, asserting claims for intentional infliction of emotional distress and defamation against his former employer, defendant UBH of Oregon, LLC ("UBH"). He simultaneously moved to proceed in forma pauperis. Upon examination of plaintiff's affidavit, I found that plaintiff was unable to afford the costs of this action and granted plaintiff's motion. However, after reviewing the complaint under the standards set out in, 28 U.S.C. § 1915(e)(2)(B)(ii), I concluded that the complaint did not contain enough factual content to support either of plaintiff's claims. I

dismissed but granted plaintiff leave to amend the complaint to include additional facts. I now review the Amended Complaint in order to see if it states a claim for relief.

## STANDARDS

In federal court, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state a claim for relief, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## BACKGROUND

Plaintiff formerly worked as a therapist for UBH. He alleges that on August 18, 2015, his clinical supervisor, Shanna Branham, placed him on administrative leave after a patient accused plaintiff of "vague verbal misconduct . . . during group therapy." Am. Compl. ¶ 3. Branham sent plaintiff two text messages on August 20 telling him to return to work the next day. When he returned to work, she fired him. Branham told plaintiff his termination was based, at least in part, on his being "late to work too often[.]" *Id.* ¶ 20. It is not clear from the Amended Complaint whether that was UBH's only stated reason for the termination or whether UBH also concluded that the patient's complaint was founded.

Plaintiff alleges that, while he was on administrative leave, Branham intentionally published false defamatory statements about plaintiff "to the CEO of CHH as well as to other senior administrative personnel and to human resources." *Id.* ¶ 13. The only allegedly defamatory statement plaintiff identifies with specificity is the statement that plaintiff was late

for work too often. Plaintiff suggests that the other defamatory statements could be obtained through the discovery process.

Plaintiff alleges that frivolous complaints against UBH employees were exceedingly common; that Branham knew the complaint against plaintiff was frivolous because the complaining patient was detoxing from drug use, had a mental illness, and suffered from severe hearing loss; that a contemporaneous, much more serious complaint against another UBH employee (that the employee had groped a patient) was never investigated; and that the same UBH employee told plaintiff UBH had not placed a therapist on administrative leave in the preceding six to seven years. He also denies that he had a punctuality problem. In response to the statements regarding his tardiness, plaintiff asserts that he had been told during training that salaried personnel could clock in at any time during the day; there was no requirement to clock in upon arrival at work.

Plaintiff posits an alternative theory for his termination. He says that UBH held weekly meetings for therapists at noon on Tuesdays. Plaintiff told Branham when he began working at UBH that he had duties as a lector at noon mass at St. Michael's Catholic Church on Tuesdays, and that he could attend the meetings only once a month. Plaintiff alleges that Branham told him the meetings were "more important than [his] religious obligations" and that the Catholic faith was "just a tradition." *Id.* ¶ 7. Plaintiff alleges that Branham resented plaintiff for missing the Tuesday meetings and was searching for an excuse to fire him; the patient complaint and his time card records, he contends, provided that excuse.

## DISCUSSION

I. *Intentional Infliction of Emotional Distress*

Plaintiff's first claim is for intentional infliction of emotional distress. Under Oregon law, to state such a claim, a plaintiff "must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995) (citing *Sheets v. Knight*, 779 P.2d 1000, 1010 (Or. 1989)). The Oregon Court of Appeals has explained that a claim for intentional infliction of emotional distress requires "conduct that is outrageous in the extreme. Conduct that is merely rude, boorish, tyrannical, churlish and mean does not satisfy that standard, nor do insults, harsh or intimidating words, or rude behavior ordinarily result in liability even when intended to cause distress." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 828 P.2d 479, 481 (Or. Ct. App. 1992) (citations and quotation marks omitted). The conduct must be so severe "that no reasonable person in plaintiff's position could be expected to endure it." *Wilson v. Dollar Tree Stores, Inc.*, 2004 WL 1381209, *4 (D. Or. June 21, 2004). "Oregon cases that have allowed claims for IIED to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment." *Id.*

In the prior dismissal order, I concluded that the complaint met the first two requirements by adequately alleging intent and causation, but failed to allege conduct amounting to an "extraordinary transgression of the bounds of socially tolerable conduct." *McGanty*, 901 P.2d at 849. The amendments to the complaint do not cure that deficiency. Plaintiff asserts that Branham sent the texts "not to be merely rude, but to inflict as much emotional distress upon Plaintiff as she could for being Catholic and worshiping his faith." Am. Compl. ¶ 11. But

plaintiff does not allege that the text messages actually said anything about plaintiff's religion. Even if they were part of a plot to fire plaintiff because he was Catholic, the two text messages—which apparently only directed plaintiff to return to work—simply "do not sink to the actionable level" with respect to a claim for intentional infliction of emotional distress. *Watte*, 828 P.2d at 481. Similarly, even if Branham lied to management about plaintiff's tardiness, those lies are not so egregious as to *extraordinarily* transgress the bounds of socially tolerable conduct. Because plaintiff has not alleged conduct that was "outrageous in the extreme," his IIED claim is dismissed.

II. *Defamation*

Plaintiff's second claim is for defamation. "The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory statement; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Starplex Corp.*, 188 P.3d 332, 347 (Or. Ct. App. 2008). Here, plaintiff's allegation that Branham publicized false statements to UBH management and employees satisfies the publication requirement, because in Oregon, unlike in many other jurisdictions, "a defamatory communication from one corporate employee to another corporate employee concerning the job performance of a third employee is 'published' for the purpose of defamation claim." *Wallulis v. Dymowski*, 918 P.2d 755, 760 (Or. 1996). Thus, only the first and third prongs of the test are at issue.

I first consider whether plaintiff has alleged the making of a defamatory statement. "A defamatory statement is one that would subject another to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the other is held or to excite adverse, derogatory or unpleasant feelings or opinions against the other." *Marleau v. Truck Ins.*

*Exchange*, 37 P.3d 148, 155 (2001) (quotation marks omitted and alterations normalized). As a threshold matter, whether a statement is capable of being defamatory is a question of law. *Reesman v. Highfill*, 965 P.2d 1030, 1034 (Or. 1998). Once the court makes that threshold determination, whether the statement actually was defamatory is a question of fact for the jury. *Haas v. Painter*, 662 P.2d 768, 770 (Or. Ct. App. 1983).

As noted above, the only statement specifically identified in the Amended Complaint is Branham's statement to UBH management and employees that plaintiff was late to work too often. I conclude that a false statement that an individual is late to work so often he should be fired may qualify as defamatory under Oregon law. A statement a person is habitually tardy is relatively minor compared to the sort of allegations the case law generally endorses as potentially defamatory. *See, e.g., Nat'l Union*, 188 P.3d at 374 (racial epithets may be defamatory); *Wright v. American's Bulletin*, 2010 WL 3292648, *1 (D. Or. Aug. 16, 2010) (statement that an individual has not paid a $94,000 debt may be defamatory). But problems with punctuality nonetheless are sufficient to excite unpleasant feelings against the tardy person, particularly because punctuality is generally regarded as an important attribute for employees. Although not dispositive, cases from other states also suggest that alleging someone has problems with tardiness can be defamatory. *See, e.g., Gilliam v. Pikeville United Methodost Hosp. of Ky., Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006); *Kanjuka v. MetroHealth Med. Ctr.*, 783 N.E.2d 920, 926 (Ohio Ct. App. 2002).

Next, I turn to whether the statement was defamatory *per se* or, in the alternative, whether plaintiff has alleged special damages. In Oregon, spoken words qualify as slander *per se* only if "they are words tending to injure the plaintiff in his or her profession or business, or if they impute to the plaintiff the commission of a crime involving moral turpitude." *Marleau*, 37 P.3d

at 155. Tardiness is not a crime involving moral turpitude, so the statement about punctuality is slander *per se* only if it would tend to injure the plaintiff in his profession as a therapist. I conclude that a statement that an individual was late to work so often he should be terminated is sufficiently related to profession to satisfy the slander *per se* standard. *See Gilliam*, 215 S.W.3d at 61 (finding slander *per se* where statement involved habitual tardiness, which was incompatible with profession as a radiology aide at a hospital). In the alternative, I conclude plaintiff has adequately alleged special harm. Special harm is loss "of a pecuniary character, or the loss of some substantial and material advantage specific to loss of reputation." *L & D of Or., Inc. v. Am. States Ins. Co.*, 14 P.3d 617, 623 (Or. Ct. App. 2000) (internal quotation marks omitted). Plaintiff alleges he was fired because of the defamatory statements and that he lost wages, insurance coverage, and other benefits.

III. *First Amendment Discrimination*

Plaintiff cites his free exercise rights under the First Amendment to the United States Constitution but does not separately enumerate a First Amendment claim. In view of plaintiff's *pro se* status, I will address the First Amendment claim as though it were separately set out in the Amended Complaint. The First Amendment applies only to governmental entities and not to private employers like UBH.[1] *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (explaining that private actors are not liable for violations of the Free

---

[1] Title VII of the Civil Rights Act prohibits private employers from terminating employees on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). But plaintiff has not asserted a claim under Title VII, and any such claim would be subject to dismissal unless plaintiff also alleged he had complied with the statute's administrative exhaustion requirements. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (explaining that, in order to survive a motion to dismiss, a Title VII claim must be supported by allegations that the plaintiff "file[d] a discrimination charge" with the federal or state agency charged with handling complaints about employment discrimination "and receive[d] a right-to-sue letter from" that agency).

Page 7 – OPINION AND ORDER

Exercise Clause unless they act under color of state law). Accordingly, any claim plaintiff asserts under the First Amendment must be dismissed.

## CONCLUSION

Plaintiff's IIED and First Amendment claims are dismissed for failure to state a claim. However, plaintiff's Amended Complaint appears to state a claim under Oregon's common law of defamation. Plaintiff must follow the instructions for service to the defendant as set out in the Court's Order to Proceed In Forma Pauperis, issued September 21, 2017 (doc. 7). A copy of that order will be mailed to plaintiff with this opinion.

IT IS SO ORDERED.

Dated this 3rd day of December 2017.

_____
Ann Aiken
United States District Judge